FILED

JUL 0 7 2014

CLERK
United States Bankruptcy Court
San Jose, California

Alexander F. Hubbard, SBN 154339
HUBBARD & HUBBARD LLP
400 Camino Aguajito
Monterey, CA 93940
Telephone: (831) 372-7571
Fax: (831) 372-1700
E-mail: afhubb@aol.com

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

In re:

**ARIDI, Souhail**

**ARIDI, Maha**

Debtor(s) _____/

Case No. 14-52649 CN

Chapter 13

**OBJECTION TO MOTION OF DEBTOR TO EXTEND THE AUTOMATIC STAY WITH RESPECT TO ALL CREDITORS; CERTIFICATE OF SERVICE**

B.L.R. 9014(1)(b)(3)(A)(iv)

Objecting Parties:

SAUCITO LAND COMPANY, PATRICIA S. WORK, TRUSTEE OF THE 2002 TRUST UAD 8/29/02, DONNA WORK SILVERBERG, JULIE WORK BECK, ALISON WORK SOLA, SUSAN WORK WARD, CHRISTOPHER S. KNIGHT, KITTY HAWKS L.L.C., LINDA A. SCHENCK, TRUSTEE OF THE LINDA A. SCHENCK 1992 TRUST AGREEMENT DATED AUGUST 19, 1993, GARY A. SCHENCK, JR. A SINGLE MAN, ERICKA SCHENCK, TRUSTEE OF THE ERICKA SCHENCK 1992 TRUST DATED AUGUST 13, 1992, HOLLY SCHENCK, A SINGLE WOMAN, ANASTASIA D. RUTENBERG, TRUSTEE OF THE ANASTASIA D. RUTENBERG 1992 LIVING TRUST DATED SEPTEMBER 24, 1992, WELLS FARGO BANK, N.A. AS TRUSTEE OF TAREN TYLER TRUST, AND JOCELYN RUTENBERG, TRUSTEE OF THE JOCELYN RUTENBERG 1993 LIVING TRUST DATED MARCH 9, 1993, (collectively referred to herein as "470 Alvarado Commercial Landlords,")

hereby object to the request of the Debtors, Souhail Kamal Aridi and Maha Amine Aridi ("Debtors"),

to extend the automatic stay with respect to all creditors.

1

The basis for this objection is that the Debtors' most recent bankruptcy filing appears to be in bad-faith. Based on the Debtors' three bankruptcy filings since 2009, this filing appears to be intended not for the purpose of reorganizing or obtaining a discharge, but to temporarily frustrate creditors by repeatedly invoking the automatic stay, and then dismissing the case, only to file for bankruptcy protection again once a creditor resumes collection efforts. By such filings, the Aridis seek merely to delay legitimate collection procedures, notably foreclosure of their residence and nonpayment of their debts to the 470 Alvarado Commercial Landlords.

On March 2, 2009, Debtors filed a Chapter 13 Bankruptcy Case, Case No. 09-51410, which case was closed, with a discharge of the Debtors on January 10, 2013. Despite having entered into their Lease with the 470 Alvarado Commercial Landlords on or about December 24, 2008, Debtors did not notify the 470 Alvarado Commercial Landlords of their 2009 bankruptcy filing.

On March 22, 2013, Debtors filed another Chapter 13 Bankruptcy Case, Case No. 13-51672, which case was dismissed on April 22, 2014, on motion of the Debtors, and without a discharge of the Debtors. Finally, on June 20, 2014, the Debtors filed yet another Chapter 13 Bankruptcy Case, Case No. 14-52649, which is pending before the Court. Attached hereto as **Exhibit "A"** is a true and correct copy of the PACER database printout with respect to Debtors' several bankruptcy filings. Attached hereto as **Exhibit "B"** is a true and correct copy of Debtors' Motion to Dismiss Chapter 13 Bankruptcy Case and Declaration of Debtors in Support of Motion to Dismiss Chapter 13 Bankruptcy Case, and attached hereto as **Exhibit "C"** is a true and correct copy of this Court's Notice of Dismissal of Case for Case No. 13-51672.

During the pendency of Case No. 13-51672, the Debtors did not pay all of their commercial leasehold obligations in connection with their Commercial Lease for 470 Alvarado Street, Monterey, as required by Bankruptcy Code Section 365(d). Attached hereto as **Exhibit "D"** is a true and correct

copy of the Objection to Confirmation of Chapter 13 Bankruptcy Plan that the 470 Alvarado Commercial Landlords filed in Bankruptcy Case No. 13-51672.

Attached hereto as **Exhibit "E"** is a Tenant Ledger prepared by a representative for one-half of the 470 Alvarado Commercial Landlords. The Tenant Ledger shows one-half of the rent billed to Debtors and one-half of the credits paid by Debtors. As the attached clearly shows, Debtors did not pay their full administrative obligations for the period of March, 2013 through October, 2013, when Debtors' lease terminated by its terms, and Debtors vacated the premises. A Tenant Ledger for the other one-half of the 470 Alvarado Commercial Landlords was not available at the time of the filing of this objection.

On May 13, 2013, the Trustee in Case No. 13-51672 issued its Trustee's Statement of Non-Readiness for Confirmation. In the Trustee's Statement, the Trustee stated "The above case is not ready for confirmation based on outstanding objections to confirmation of the plan or other deficiencies, such as a default on Chapter 13 plan payments." Attached hereto as **Exhibit "F"** is a true and correct copy of the Trustee's Statement of Non-Readiness for Confirmation.

The Debtors herein claim that the present Chapter 13 case was filed in good faith. The 470 Alvarado Commercial Landlords, however, dispute this contention. As noted above, the Debtors did not make all of their administrative rental payments during their previous Chapter 13 Bankruptcy Case, which they dismissed. Moreover, the Trustee therein did not confirm their proposed bankruptcy plan, as the Debtors' plan did not include certain creditors, among them the 470 Alvarado Commercial Landlords, nor did the Debtors make all payments required pursuant to their Chapter 13 plan.

On or about May 16, 2014, the 470 Alvarado Commercial Landlords filed a lawsuit in the Monterey County Superior Court, Case No. M127863, against the Debtors, seeking recovery on causes of action for breach of contract and common counts for Debtors' breach of their Commercial Lease

with the 470 Alvarado Commercial Landlords. Attached hereto as **Exhibit "G"** is a true and correct copy of the Monterey County Superior Court Case action filed by the 470 Alvarado Street Commercial Landlords against Debtors.

The 470 Alvarado Street Landlords hereby ask the Court to not extend the automatic stay with respect to them so that the 470 Alvarado Street Commercial Landlords may pursue their current litigation against the Debtors in the Monterey County Superior Court.

The 470 Alvarado Street Commercial Landlords are informed and believe and thereon allege that Debtors are merely availing themselves of the jurisdiction of the Bankruptcy Court to temporarily frustrate their creditors by repeatedly invoking the automatic stay, and then dismissing the case, only to file again once a creditor, in this case the 470 Alvarado Street Commercial Landlords, resumes collection efforts.

Dated: July 3, 2014

_____
Alexander F. Hubbard, Attorney for Objecting Parties,
470 Alvarado Commercial Landlords

Hubbard & Hubbard LLP
400 Camino Aguajito, Monterey, CA 93940
Telephone: (831) 372-7571

**DEBTOR(S') ADDRESS(S):**

Souhail Aridi
aka Souhail Kamal Aridi, Aridi Souhail,
aka Souhail Amid
3118 Bayer Street
Marina, CA 93933

Maha Aridi
aka Maha Amine Aridi, Maha A. Souhail,
dba Maha's Cuisine, dba Aridi, Inc.
fdba Aridi Daycare
3118 Bayer Street
Marina, CA 93933

4

## CERTIFICATE OF SERVICE

I am not less than 18 years of age and not a party to the within case. My business address is: 400 Camino Aguajito, Monterey, CA 93940. I served this **OBJECTION TO MOTION OF DEBTOR TO EXTEND THE AUTOMATIC STAY WITH RESPECT TO ALL CREDITORS** by first-class United States Mail, postage pre-paid, at Monterey, California, on the date noted below and addressed to the Debtors above, and on those listed below. If entitled to notice, the Chapter 13 Trustee will receive such notice upon the filing of this document   I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  July 3, 2014, at Monterey, California.

*Jill R. Jones*
Jill R. Jones

**Attorney for Debtor(s) (name and address):**

Jason Vogelpohl
Central Coast Bankruptcy
532 Pajaro St.
Salinas, CA  93901
Telephone number:  (831) 783-0260

**Bankruptcy Trustee (name and address):**

Devin Derham-Burk
P.O. Box 50013
San Jose, CA  95150-0013
Telephone number:  (408) 354-4413

C:\CLIENT DOCS\SAUCITO\Objection to Motion of Debtor (U.S. Bankruptcy Court SJ - Re Aridi) 7-3-14.doc

Case: 14-52649    Doc# 14    Filed: 07/07/14    Entered: 07/08/14 16:04:15    Page 5 of 25

# EXHIBIT "A"

PACER Database with Respect to Debtors' Bankruptcy Filings

# Select a Case

**There was 1 matching person.**

**There were 3 matching cases.**

| Name | Case No. | Case Title | Chapter / Lead BK case | Date Filed | Party Role | Date Closed |
|------|----------|-----------|------------------------|-----------|-----------|-------------|
| Aridi, Souhail Kamal (pty) (3 cases) | 09-51410 | Souhail Kamal Aridi and Maha Amine Aridi | 13 | 03/02/09 | Debtor | 01/10/13 |
| | 13-51672 | Souhail Kamal Aridi and Maha Amine Aridi | 13 | 03/22/13 | Debtor | 06/13/14 |
| | 14-52649 | Souhail Kamal Aridi and Maha Amine Aridi | 13 | 06/20/14 | Debtor | N / A |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/01/2014 14:28:40 | | | |
| **PACER Login:** | hh2635 | **Client Code:** | Aridi |
| **Description:** | Search | **Search Criteria:** | LName: aridi FName: souhail |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**EXHIBIT "A"**

# EXHIBIT "B"

Debtors' Motion to Dismiss Chapter 13 Bankruptcy Case and
Declaration of Debtors in Support of Motion to Dismiss
Chapter 13 Bankruptcy Case

Jason Vogelpohl, Esq. #252407
Aaron B. Liption, Esq. #267329
Central Coast Bankruptcy, Inc.
532 Pajaro Street
Salinas, CA 93901
831.783.0260 – Telephone
831.585.1024 – Facsimile

Attorney for Debtor(s)

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

In re:

ARIDI, Souhail

ARIDI, Maha

               Debtor(s)

_____/

Case No:   13-51672-CN
Chapter 13

**MOTION TO DISMISS CHAPTER 13
BANKRUPTCY CASE**

I say and declare:

      I, Jason Vogelpohl of Central Coast Bankruptcy, Inc, am the attorney for Debtors herein.

      Debtors filed for Chapter 13 Bankruptcy on March 22, 2103, in order to allow them to

save their business, Maha's Cuisine, strip off a second mortgage against real property, to allow

for additional time to modify their first mortgage lien, and to resolve general unsecured debt.

Debtors have ceased operating Maha's Cuisine, and incurred substantial new debts and liabilities

associated with the closure of the business.

//

//

1

**EXHIBIT "B"**

Case: 13-51672    Doc# 36    Filed: 04/07/14    Entered: 04/07/14 18:00:10    Page 1 of 2

Case: 14-52649    Doc# 14    Filed: 07/07/14    Entered: 07/08/14 16:04:15    Page 9 of
25

WHEREFORE Debtors pray as follows:

1.  The pending Chapter 13 Bankruptcy case, Case No. 13-5-1672-CN, be dismissed

without prejudice

2.  For such other relief as the Court deems appropriate.

Date: April 7, 2014                                    /s/ Jason Vogelpohl #252407
                                                       JASON VOGELPOHL, ESQ.
                                                       Attorney for Debtor(s)

2

1 | Jason Vogelpohl, Esq. #252407
2 | Aaron B. Lipton, Esq. #267329
  | **Central Coast Bankruptcy, Inc.**
3 | 532 Pajaro Street
  | Salinas, CA 93901
4 | 831.783.0260 – Telephone
5 | 831.585.1024 – Facsimile

6 | Attorney for Debtor(s)

7

8

9 | UNITED STATES BANKRUPTCY COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | In re:

12 | ARIDI, Souhail

Case No: 13-5-1672 CN
Chapter 13

14 | ARIDI, Maha

**DECLARATION OF DEBTORS IN
SUPPORT OF MOTION TO DISMISS
CHAPTER 13 BANKRUPTCY CASE**

15 | Debtor(s)

16 | _____/

17 | We say and declare:

18 | We are the Debtors herein. We make this Declaration that the information contained

19 | herein is accurate.

20 | This motion is made on the following grounds:

21

22 | a. We originally filed our Chapter 13 Bankruptcy Petition in order save our business,

23 | Maha's Cuisine, as well as to strip off the second mortgage lien held against our real

24 | property, to allow us additional time to modify our first mortgage lien, and to resolve

25 | general unsecured debt we incurred over a number of years.

26 | //

27 | //

28 | //

b.　　　Since the filing of our Chapter 13 Bankruptcy Case we have ceased operating Maha's cuisine, substantially changing our estate. We were unable to make the business profitable, and incurred additional liabilities and debts related to the closing of the business. Based on these liabilities and our substantially changed estate, we believe it is in our best interest to dismiss the present case and refile.

c.　　　There are no pending motions to convert our pending Chapter 13 Bankruptcy case to a case under Chapter 7 of the Bankruptcy Code, nor are there any pending motions to dismiss our case with prejudice.

Date:　 March 20, 2014 　　　　　　　　　/s/ Souhail Aridi _____
　　　　　　　　　　　　　　　　　　　　　SOUHAIL ARIDI

Date:　 March 20, 2014 　　　　　　　　　/s/ Maha Aridi _____
　　　　　　　　　　　　　　　　　　　　　MAHA ARIDI

# EXHIBIT "C"

Court's Notice of Dismissal of Case for Case No. 13-51672

Form DOC

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| In Re: Souhail Kamal Aridi and Maha Amine Aridi | Case No.: 13–51672 CN 13 |
|---|---|
| aka   Aridi Souhail | Chapter: 13 |
| aka   Souhail Amid | |
| aka   Maha A Souhail | |
| dba   Maha's Cuisine | |
| dba   Aridi, Inc. | |
| fdba   Aridi Daycare | |
|       Debtor(s) | |

## NOTICE OF DISMISSAL OF CASE

**Notice is given** that an order was filed on 4/22/14 dismissing the above–captioned case.

Dated: <u>4/23/14</u>

For the Court:

Edward J. Emmons
Clerk of Court
United States Bankruptcy Court

Doc # 40

## EXHIBIT "C"

# EXHIBIT "D"

Objection to Confirmation of Chapter 13 Bankruptcy Plan that
the 470 Alvarado Commercial Landlords filed in Bankruptcy
Case No. 13-51672

Alexander F. Hubbard, SBN 154339
HUBBARD & HUBBARD LLP
400 Camino Aguajito
Monterey, CA 93940
Telephone: (831) 372-7571
Fax: (831) 372-1700
E-mail: afhubb@aol.com


# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | **Souhail Kamal Aridi** | Chapter   13 |
| | **Maha Amine Aridi** | Case No.  13-51672 |
| | | OBJECTION TO CONFIRMATION OF CHAPTER 13 BANKRUPTCY PLAN; CERTIFICATE OF SERVICE |
| Debtor(s)_____/ | | |

Objecting Parties:

SAUCITO LAND COMPANY, PATRICIA S. WORK, TRUSTEE OF THE 2002 TRUST UAD 8/29/02, DONNA WORK SILVERBERG, JULIE WORK BECK, ALISON WORK SOLA, SUSAN WORK WARD, CHRISTOPHER S. KNIGHT, KITTY HAWKS L.L.C., LINDA A. SCHENCK, TRUSTEE OF THE LINDA A. SCHENCK 1992 TRUST AGREEMENT DATED AUGUST 19, 1993, GARY A. SCHENCK, JR. A SINGLE MAN, ERICKA SCHENCK, TRUSTEE OF THE ERICKA SCHENCK 1992 TRUST DATED AUGUST 13, 1992, HOLLY SCHENCK, A SINGLE WOMAN, ANASTASIA D. RUTENBERG, TRUSTEE OF THE ANASTASIA D. RUTENBERG 1992 LIVING TRUST DATED SEPTEMBER 24, 1992, WELLS FARGO BANK, N.A. AS TRUSTEE OF TAREN TYLER TRUST, AND JOCELYN RUTENBERG, TRUSTEE OF THE JOCELYN RUTENBERG 1993 LIVING TRUST DATED MARCH 9, 1993, (collectively referred to herein as "470 Alvarado Commercial Landlords,")

hereby object to the Chapter 13 Bankruptcy Plan filed herein by Debtors, Souhail Kamal Aridi, aka

Aridi Souhail, aka Souhail Amid, and Maha Amine Aridi, aka Maha A. Souhail, dba Maha's Cuisine,

dba Aridi, Inc., fdba Aridi Daycare.

**EXHIBIT "D"**

The basis for the objection is that the Plan does not include the Debtor's commercial lease for premises located at 470 Alvarado Street, Monterey, California. A true and correct copy of said Lease is attached hereto as **Exhibit "A"** and is fully incorporated herein by this reference thereto. Debtors signed the Lease in their names as individuals.

Moreover, the 470 Alvarado Landlords were not listed as a creditor in connection with Debtor's initial filing herein on March 22, 2013. On March 25, 2013, the Debtors herein were served with a 3-Day Notice to Pay Rent or Quit in the amount of $76,694.68. Attached hereto as **Exhibit "B"** is a true and correct copy of the 3-Day Notice to Pay or Quit that was served on the Debtors on March 25, 2013. Attached hereto as **Exhibit "C"** is a true and correct copy of the Proof of Service of said 3-Day Notice to Pay or Quit on Maha Aridi. Attached hereto as **Exhibit "D"** is a true and correct copy of the Proof of Service of said 3-Day Notice to Pay or Quit on Souhail Aridi.

Finally, to date, the Debtors have not paid all of the administrative rents that are due and owing under the aforesaid commercial lease. The only payment that has been made is a payment of $2,500.00, against April, 2013, rent of $3,636.00. No payments whatsoever have been received for May.

The 470 Alvarado Street Landlords hereby ask the Court to require the Debtors to amend their Chapter 13 Plan to include the 470 Alvarado Street Landlords as creditors and to put forward a payment plan with respect to all tenant arrearages as of the date of the bankruptcy filing.

Dated: May 8, 2013

Alexander F. Hubbard, Attorney for Objecting Parties,
470 Alvarado Commercial Landlords

Hubbard & Hubbard LLP
400 Camino Aguajito, Monterey, CA 93940
Telephone: (831) 372-7571

**DEBTOR(S') ADDRESS(S):**

Souhail Kamal Aridi
aka Aridi Souhail, aka Souhail Amid
3118 Bayer Street, Marina, CA 93933

Maha Amine Aridi
aka Maha A. Souhail, dba Maha's Cuisine, dba Aridi, Inc.
fdba Aridi Daycare
3118 Bayer Street
Marina, CA 93933

## CERTIFICATE OF SERVICE

I am not less than 18 years of age and not a party to the within case. My business address is: 400 Camino Aguajito, Monterey, CA 93940. I served this OBJECTION TO CONFIRMATION OF CHAPTER 13 BANKRUPTCY PLAN by first-class United States Mail, postage pre-paid, at Monterey, California, on the date noted below and addressed to the Debtors above, and on those listed below. If entitled to notice, the Chapter 13 Trustee will receive such notice upon the filing of this document  I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: May 8, 2013, at Monterey, California. _____
                                                                        Jill R. Jones

**Attorney for Debtor(s) (name and address):**

Jason Vogelpohl
Central Coast Bankruptcy
532 Pajaro St.
Salinas, CA 93901
Telephone number: (831) 783-0260

**Bankruptcy Trustee (name and address):**

Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013
Telephone number: (408) 354-4413

C:\CLIENT DOCS\SAUCITO\Objection to Confirmation of Plan (U.S. Bankruptcy Court SJ - Re Aridi).doc

# EXHIBIT "A"

# Lease Agreement

SCANNED

1/9/09 SCANNED

# LEASE AGREEMENT

## ARTICLE I
### Dates and Names of Parties

Section 1.01. This Lease executed in duplicate is made on ___12/24/08___, 2008, between the following parties, designated as LESSOR and LESSEE and each hereinafter referred to as LESSOR and LESSEE respectively, in this Lease:

LESSOR.  SAUCITO LAND COMPANY, PATRICIA S. WORK, TRUSTEE OF THE 2002 TRUST UAD 8/29/02, DONNA WORK SILVERBERG, JULIE WORK BECK, ALISON WORK SOLA, SUSAN WORK WARD, CHRISTOPHER S. KNIGHT, KITTY HAWKS L.L.C., LINDA A. SCHENCK, TRUSTEE OF THE LINDA A. SCHENCK 1992 TRUST AGREEMENT DATED AUGUST 19, 1993, GARY A. SCHENCK, JR. A SINGLE MAN, ERICKA SCHENCK, TRUSTEE OF THE ERICKA SCHENCK 1992 TRUST DATED AUGUST 13, 1992, HOLLY SCHENCK, A SINGLE WOMAN, ANASTASIA D. RUTENBERG, TRUSTEE OF THE ANASTASIA D. RUTENBERG 1992 LIVING TRUST DATED SEPTEMBER 24, 1992, WELLS FARGO BANK, N.A. AS TRUSTEE OF TAREN TYLER TRUST, AND JOCELYN RUTENBERG, TRUSTEE OF THE JOCELYN RUTENBERG 1993 LIVING TRUST DATED MARCH 9, 1993 .

LESSEE:  SOUHAIL ARIDI AND MAHA ARIDI

## ARTICLE II
### Demise and Description of Property

Section 2.01. LESSOR hereby Leases to LESSEE and LESSEE hires from LESSOR on and subject to all terms, covenants, and conditions and to the reservations and exceptions herein set forth, all that real property described as follows and hereinafter referred to as the "demised premises":

CITY OF:  Monterey, County of Monterey, State of California
ADDRESS:  470 Alvarado Street
APPROXIMATE
SQUARE FOOTAGE:  Sixteen Hundred (1,600) on the ground floor, plus a mezzanine

### "AS IS" Condition

Section 2.02 The demised premises, including any fixtures and any personal property, is being Leased in its "AS IS" condition, without any expressed or implied warranties. Any and all representations and warranties of LESSOR set forth elsewhere in this Lease are hereby deleted. LESSEE hereby represents that LESSEE or LESSEE'S agents have inspected the subject property to the full extent deemed appropriate and that LESSEE is satisfied with its condition. LESSEE acknowledges that as of the date of this Lease, the subject property and the Premises and improvements are in good order, repair, and condition. LESSOR shall not be liable to LESSEE or any person for any latent or existing defect in the subject property, or for any injury or damages that may result to any person or property, including, without limitation, the person or property of LESSEE, by or from any cause whatsoever arising out of the present actual or latent condition of the subject property. LESSEE has not relied on any acts, including any written or oral statements, by LESSOR, or any person acting on behalf of LESSOR, in entering into this Lease, but rather has relied on his, her or its own independent investigation of the subject property.

## ARTICLE III
### Term

Section 3.01(a) The term of this Lease shall be as follows, hereinafter called the Lease term, and subject to earlier termination as hereinafter more particularly provided in this Lease:

Period of  approximately Five (5) years
Commencing on  December 24, 2008
Ending on  October 31, 2013

Section 3.01(b) If the LESSOR is unable to deliver possession of the premises by the commencement of the term as a result of causes beyond its reasonable control, LESSOR will not be liable for any damage caused for failing to deliver possession, and this Lease will not be void or voidable and the term will not be extended by the delay.

<u>Option to Renew and Extend</u>

Section 3.02(a)     Provided that LESSEE shall have paid at least seventy five percent (75%) of his rental payments on or before the exact due date, then and only then, LESSEE is hereby granted one (1) option to renew this Lease for an additional period of five (5) years from the expiration date hereof, but otherwise on the same terms, covenants, and conditions, and subject to the same exceptions and reservations herein contained, except that the rental value of the demised premises shall be determined as of the effective date of renewal.

In the event there is a dispute as to the current rental value as of the date of renewal, and LESSOR and LESSEE cannot mutually agree on a rental figure for the renewal period ninety (90) days before the expiration of this Lease, each party hereto shall appoint one (1) real estate appraiser, as arbitrators    The two (2) real estate appraisers so appointed shall then appoint a third (3rd) real estate appraiser.   In order to be eligible for appointment, the appraisers must have at least five (5) years full time commercial appraisal experience in the area in which the premises are located. When all three (3) have been appointed, they shall then appraise the demised premises and determine a rental value for it on the basis of its highest and best use. The appraisal and determination shall be made within thirty (30) days prior to expiration of the term, or previously extended term hereof, and in writing and signed by the arbitrators in duplicate.   One of the writings shall be delivered to LESSOR and the other to LESSEE.  Each party hereto shall pay the charges of the arbitrator appointed by him and the expenses incurred by such arbitrator.  The charges and expenses of the third arbitrator shall be paid by the parties hereto in equal shares.   The parties hereto expressly agree to be bound by the decision of the appraisers acting as a Board of Arbitration, as herein provided.  If the parties fail to mutually agree on a rental figure, and if either or both fail to appoint an appraiser as herein provided, or if the two appraisers appointed fail to appoint a third appraiser as herein provided, or if at least two of the three appraisers so appointed do not agree on a rental figure on or before the 45th day prior to the expiration of the term or previously extended term hereof, the reasonable rental value of the demised premises shall be determined by the Superior Court of the State of California for the County of Monterey, in a declaratory relief or other action brought therein for that purpose, and, in any such action, each party shall bear his own attorney's fees and costs and each expressly agrees to be bound by the rental figure as determined by the judgment of the court

Section 3.02(b).     This option shall be exercised by LESSEE delivering to LESSOR, in person or by United States certified mail, at least six months but not more than one year before the expiration of the term hereof, written notice of his election to renew this Lease as herein provided.   Failure to deliver said written notice of exercise of option as above shall make the option null and void.

Section 3.02(c).     LESSOR shall, after receiving Notice of LESSEE'S exercise of option to renew, within sixty days thereafter, notify LESSEE in writing by personal delivery or by United States mail as to what he determines the current rental value to be for the renewal period.

Section 3.02(d).     In the event of a renewal of the Lease as above provided, an addendum shall be attached to this Lease specifying the rental figure and any changes in terms and conditions.

Section 3.02(e).     In the event that LESSEE does not renew or extend the term of this Lease as herein provided, and holds over beyond the expiration of the term hereof, such holding over shall be deemed a month-to-month tenancy only at 150% of the monthly rent in effect at the expiration of the term, per month, payable on the first day of each and every month thereafter until the tenancy is terminated in a manner provided by law.

Section 3.02(f).     LESSEE'S option to renew shall be null and void if this Lease is assigned or sublet, without the consent of the LESSOR, or if LESSEE is in default under any provision of this Lease, either at the time LESSEE gives notice of exercise of option to renew or at the end of the term of this Lease.


ARTICLE IV
<u>Rent and Other Payments</u>

Section 4.0l(a).     LESSEE agrees and shall pay to LESSOR at 156 Bonifacio Place, Monterey, California 93942-0087 or such other place as LESSOR may from time to time designate, as rent for the demised premises, the following amount, payable in equal monthly installments as shown, on the dates shown:

| RENT: | 12-1-2008 to 4-30-2009: | $2,517 08 per month |
|---|---|---|
| | 5-1-2009 to 10-31-2009: | $3,017 08 per month |
| | 11-1-2009 to 10-31-2010 | $3,600.00 per month |
| | 11-1-2010 to 10-31-2013 | Per Section 4 03 herein below, with the Base Rent defined as $3,600.00 per month. |

Date due,
each month,
in advance:
Commencing:     First of month
December 1, 2008

Section 4 02.  Receipt of $2,517.08 for the first month's rent, and the last months rent of $3,600 00, excluding any cost of living increase for the last months rent, is hereby acknowledged.

### Cost of Living Increase

Section 4.03.  In addition to the base rent herein set forth, LESSEE shall pay to LESSOR a sum equal to the percentage rise in the cost of living. The base rent shall be based on the cost of living for the month of August, 2009. The base rent during the term of this Lease shall be adjusted every year commencing November 1, 2010 in the following manner.

The base for computing the adjustment is the San Francisco-Oakland Metropolitan Area Consumer Price Index (ALL ITEMS), All Urban Consumers published by the Bureau of Labor Statistics ("Index") for the month of August, 2009 ("Beginning Index")  If the Index published for the month of August immediately preceding the adjustment date ("Adjustment Index") has increased over the Beginning Index, the monthly rent for the following year shall be set by multiplying the monthly base rent by a fraction, the numerator of which is the Adjustment Index and the denominator of which is the Beginning Index.  In no event shall an adjustment reduce the rent to less than the adjusted rent for the immediately preceding Lease year. Should the index not be available for a period of time LESSEE shall immediately pay the retroactive increases upon said index being published.

If the now published Index is discontinued or revised during the Lease term, or the base year of the Index is changed, the Index shall be converted in accordance with the conversion factor published by the Bureau of Labor Statistics, and if no conversion factor, then by the use of such other governmental index or computation with which it is replaced in order to obtain substantially the same result as would be obtained if the Index had not been discontinued or revised.

### Additional Payment

Section 4.04.  In addition to all other payments of rent as hereinbefore set forth, LESSEE shall pay or reimburse all, or his prorata share, of utilities, including connection charges, and shall reimburse LESSOR for all, or his prorata share of fire insurance premiums, liability insurance premiums and any special assessments levied against the premises by any governmental agency.  LESSEE'S share of insurance premiums shall be thirteen percent (13%) of the annual premium for the building and property of which the premises are a part.

### Payment of Taxes
### Real and Personal Property Taxes

Section 4.05.  LESSEE shall pay and discharge all, or his prorata share, of real and personal property taxes allocated to the real property herein described as allocated to the space herein Leased. LESSEE'S prorata share of taxes is agreed to be thirteen percent (13%) of the taxes assessed and payable for APN 001-572-004.

LESSEE hereby agrees to be responsible for any increases in the taxes occasioned by reassessment of the demised premises, for any reason whatsoever, including, but not limited to the transfer by LESSOR of all or any part of his interest, whether such transfer be by death, sale, or any other means.

### Definition of Taxes

Section 4.05(a).  The term "taxes", as used in this Lease, shall include all real property taxes on the building, the land on which the building is situated, and the various estates in the building and the land.  The term "taxes" also shall include all personal property taxes levied on the property used in the operation of the building; taxes of every kind and nature levied and assessed in lieu of, in substitution for, or in addition to, existing or additional real or personal property taxes on the building, land, or personal property, whether or not now customary or within the contemplation of the parties to this Lease.  "Taxes" also shall include the cost to LESSOR of contesting the amount, validity, or applicability of any taxes mentioned in this paragraph and shall include any additional taxes levied by reason of remodeling or transferring the property.

### Time of Payment of Taxes

Section 4 05(b)  LESSEE shall pay the taxes due hereunder on demand of LESSOR, not later than thirty days after billing by LESSOR.

### Separate Assessment of LESSEE'S Personal Property Taxes

Section 4.05(c)  During the Lease term, LESSEE shall cause all taxes, assessments and other charges levied or imposed upon any personal property situated in, on, or about the demised premises to be levied or assessed separately from the Leased premises, and not as a lien thereon.

### Prorations

Section 4 05(d)  Partial month's rent will be prorated on the basis of a thirty (30) day month.  Insurance premiums will be prorated on the basis of a 365 day year.  Property tax reimbursements will be prorated on the basis of a 360 day year.  Any and all other sums due will be prorated as required, on the basis of a 365 day year.

## Late Payment of Rents & Other Amounts Due

Section 4.06.    Failure to make payments of rent or any other amounts within ten (10) days of their due date under this Lease shall be charged with a ten percent (10%) late payment fee. The late payment fee shall be based upon the balance due.

## Security Deposit

Section 4.07(a).    LESSEE has, this day, deposited with LESSOR the following additional sum, receipt of which is hereby acknowledged by LESSOR, as security for the full and faithful performance by LESSEE of the following terms, conditions, and covenants of this Lease on LESSEE'S part to be performed and kept:

$3600.

## Holding of Deposit

Section 4.07(b).    The "Security Deposit" shall be held by LESSOR as security for the faithful performance by LESSEE of all the terms, covenants, and conditions of this Lease by LESSEE to be kept and performed during the Lease term.

## Use of Deposit

Section 4.07(c).    If at any time during the term of this Lease any of the rent shall be overdue and unpaid, or any other sum payable by LESSEE to LESSOR shall be overdue and unpaid, then at LESSOR'S option, LESSOR may appropriate and apply any portion of the Security Deposit to the payment of any such overdue rent or other sum.    LESSEE shall immediately upon demand pay to LESSOR a sum equal to the portion of the security deposit so appropriated and applied by LESSOR as provided above, so as to maintain the security deposit in the sum initially deposited with LESSOR.    In the event of failure of LESSEE to keep and perform all of the terms, covenants, and conditions of this Lease to be kept and performed by LESSEE, then at LESSOR'S option, LESSOR may, after terminating this Lease, appropriate and apply the entire Security Deposit, or so much thereof as may be necessary, to compensate LESSOR for all loss or damage sustained or suffered by LESSOR due to such breach on the part of the LESSEE.

## Restoration of Deposit

Section 4.07(d)    Should LESSEE comply with all the terms, covenants, and conditions and promptly pay all of the rental as it falls due, and all other sums payable by LESSEE to LESSOR hereunder, and return the demised premises to its original condition, then and only then, the Security Deposit shall be returned in full to LESSEE, without interest, no later than (30) days after termination of this Lease.

## Use of Security Deposit

Section 4.07(e).    LESSOR may during the term of this Lease, deposit said Security Deposit in his own account.    Said deposit may be commingled with the monies of the LESSOR and used by the LESSOR during the term of this Lease without any obligation of whatever kind, including but not limited to, the payment of interest on said money by LESSOR to LESSEE.


## ARTICLE V
## Description of Uses - Approval of LESSOR

Section 5.01.    During the Lease term, LESSEE shall use and occupy the demised premises for the use of:
## RESTAURANT

and the usual and normal business incidental thereto, and for no other use.    Any other use of the demised premises shall not be made without approval in writing by LESSOR.    LESSEE shall be solely responsible for the obtaining of any and all governmental approvals, authorizations and permits necessary or desirable to enable LESSEE to operate LESSEE'S business in the premises.    LESSEE shall comply with any and all conditions and requirements imposed thereby, all at LESSEE'S sole cost and expense.    LESSOR shall have no obligation whatsoever for obtaining any such approvals, authorizations or permits, nor shall LESSOR have any obligations or responsibility whatsoever by reason of any governmental intervention, prohibition, condition, or qualification with respect to LESSEE'S occupancy of the demised premises or LESSEE'S business conducted therein regardless of whether any such governmental action be based on any action or inaction of LESSOR or any action or inaction of LESSEE.    LESSOR makes no warranties or representations whatsoever with respect to the status or need for any governmental approvals, authorizations or permits by either LESSOR or LESSEE, and LESSEE assumes full and complete responsibility for determining what permits, approvals and authorizations, if any, are required, necessary or desirable.

## Indemnity for Violation of Law

Section 5.02.    LESSEE covenants and agrees to indemnify and save LESSOR harmless from any penalties, damages, or charges imposed for any violation of any and all laws, ordinances, and regulations applicable to the use and occupancy of the demised premises, whether occasioned by neglect, omission, or willful act of LESSEE or any person upon the demised premises by license or invitation of LESSEE or holding or occupying the same or any part thereof under or by right of LESSEE.

### Quiet Enjoyment

Section 5.03    LESSEE shall take no action nor perform any act which will disturb the quiet enjoyment of neighboring premises by other tenants in the building of which the premises are a part.

### Hazardous Materials

Section 5.04    For the purposes of this Lease, a "hazardous material" is defined to mean any substance, material or waste, including asbestos and petroleum (including crude oil or any fraction thereof), which is or becomes designated, classified or regulated as being "toxic", "hazardous", a "pollutant" or similar designation under any federal, state or local law, regulation or ordinance.  LESSEE agrees to indemnify, defend and hold LESSOR harmless from and against all liabilities, claims, actions, damages, costs and expenses or loss arising out of or resulting from the presence of any hazardous material brought or installed or permitted to be brought or installed by LESSEE upon the demised premises or the building of which the premises are a part.  This indemnification shall survive the termination of this Lease. LESSEE shall furnish LESSOR a copy of any hazardous waste removal contract in force at any time during LESSEE'S occupancy of the Premises.  All such contracts shall provide that the contracting party shall give written notice of any termination of the contract to LESSOR.

### ARTICLE VI
### LESSEE'S RIGHT TO ENCUMBER

Section 6.01.    LESSEE shall at no time encumber the Leasehold interest by deed of trust, mortgage, or other security instrument.

### ARTICLE VII
### IMPROVEMENTS
### Improvements and Mechanic's Lien

Section 7.01(a).    LESSEE shall make no improvements on the demised premises without the written consent of LESSOR.  Any alterations made will remain on and be surrendered with the premises on expiration or termination of the term, except that LESSOR may elect, in writing, to require LESSEE to remove any alterations LESSEE has made to the premises.  If LESSOR so elects, LESSEE, at its cost, will restore the premises to the condition designated by LESSOR in its election, before the expiration or termination of LESSEE'S tenancy.

### Prohibition Against Mechanic's Lien

Section 7.01(b).    LESSEE shall neither permit nor suffer any mechanic's liens or other liens to be filed against the demised premises or any part thereof by reason of any work, labor, or materials done on or in, or supplied to, the demised premises at LESSEE'S request or at the request of any of LESSEE'S agents, employee or sublessees.  LESSEE further covenants and agrees to hold LESSOR free and harmless of and from any and all loss or damage howsoever arising by virtue of any such liens or claims of liens, including any expense reasonably incurred by LESSOR in defense of same.

### Removal of Mechanic's Lien

Section 7.01(c).    Should any such lien be filed, LESSEE agrees to and shall cause it to be removed forthwith.

### Removal of Liens by LESSOR

Section 7.01(d).    Should LESSEE fail to discharge any such lien or furnish a bond against the foreclosure thereof, LESSOR may, but shall not be obligated to, discharge the same or take such other action as he deems necessary to prevent a judgment of foreclosure on said lien from being executed against the demised property, and all costs and expenses, including reasonable attorney's fees incurred by LESSOR, shall be repaid by LESSEE to LESSOR on written demand therefor.

### Notice of Nonresponsibility

Section 7.01(e).    Nothing in this Lease shall be construed as in any way constituting a consent or request by LESSOR, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer, or materialman for the performance of any labor or the furnishing of any materials for any specific or general improvements, alteration, or repair of or to the demised premises, or to any buildings or improvements thereof, or to any part thereof.  LESSOR shall have the right in the event of any construction, alteration, repair, or work in, or to the demised premises or to any part thereof, to post and file such notices of nonresponsibility as are now or shall hereafter be provided by law.  If LESSEE makes any alterations to the premises as provided in this paragraph, the alterations will not be commenced until ten (10) days after LESSOR has received notice from LESSEE stating the date the installation of the alterations is to commence so that LESSOR can post and record an appropriate notice of non responsibility.